IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRAVIS BEAVER,                                    3:11-CV-00719-BR

           Plaintiff,                             OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

           Defendant.

MERRILL SCHNEIDER
Schneider Caver Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

           Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**MATHEW W. PILE**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/221A
Seattle, WA  98104-7075
(206) 615-3760

         Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Travis Beaver seeks judicial review of the

Commissioner of Social Security's final decision in which he

denied Plaintiff's June 4, 2008, applications for Disability

Insurance Benefits (DIB) under Title II of the Social Security

Act, 42 U.S.C. § 401-34, and Supplemental Security Income (SSI)

under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-

83f.  This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **REMANDS** the final

decision of the Commissioner pursuant to sentence four of 42

U.S.C. § 405(g) for the immediate calculation and payment of

benefits.


                **ADMINISTRATIVE HISTORY**

    Plaintiff applied for DIB and SSI on June 4, 2008, alleging

he has been disabled since January 15, 2007, with scoliosis,

gout, compression fractures of the thoracic spine, and left thigh

2  - OPINION AND ORDER

pain.  Tr. 117, 120, 149.  At the hearing Plaintiff also
asserted he suffers from migraine headaches and depression.
Tr. 46-48.

Plaintiff's applications were denied initially and on
reconsideration.  Tr. 61-64.  An Administrative Law Judge (ALJ)
held an evidentiary hearing on May 26, 2010, at which Plaintiff
and a vocational expert (VE) testified.  Tr. 29-60.

The ALJ issued his opinion on June 3, 2010, in which he
found  Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 15-24.  That decision became the final decision
of the Commissioner on April 15, 2011, when the Appeals Council
denied Plaintiff's request for review.  Tr. 1-3.

When the ALJ's decision was on appeal, the Appeals Council
considered a medical opinion by Plaintiff's treating physician,
Kevin Kane, D.O., which was submitted by Plaintiff's counsel
after the administrative hearing before the ALJ despite the
alleged efforts of Plaintiff's counsel to obtain and to submit
the report before that hearing occurred.

On June 15, 2011, Plaintiff filed his Complaint seeking this
Court's review of the Commissioner's final decision.


## BACKGROUND

### I.   Plaintiff's Testimony.

At the time of the administrative hearing, Plaintiff was

29 years old.  Tr. 33.  He had completed the 9th grade.  Tr. 33.
He is able to read, to write, and to do basic arithmetic.
Tr. 34.  He lives with his brother.  Tr. 34.

Plaintiff alleged his disabling impairments include gout in
both feet, scoliosis, compression fractures of the thoracic
spine, left thigh pain, migraine headaches, and depression.
Tr. 35-48.  According to Plaintiff, his gout and his back pain
are the reasons he is unable to work.  He takes medication to
prevent gout symptoms from flaring up, but it is only effective
for a short time.  Tr. 36.

Plaintiff has been advised his back pain might be reduced by
10-20 percent if he has back surgery.  Tr. 37.  He is able to
dress himself, and he bathes once a week despite his back pain.
Tr. 37.  He does not cook or do laundry.  Tr. 38.  He has been
in seven automobile accidents and was driving in some of them.
Tr. 38.  In "two or three" of those accidents, Plaintiff lost
consciousness.  Tr. 47.  As a result, he no longer drives.
Tr. 47.

Plaintiff's daily activities include watching television,
occasionally reading magazines, and playing video games.  Tr. 49.
He alternates sitting, standing, and lying down in order to
obtain some relief from his back pain.  Tr. 39.  His doctor has
advised him to exercise to ease his back pain and to strengthen
his back, but he is unable to do much.  Tr. 40.

4  - OPINION AND ORDER

Plaintiff has gout flare-ups three or four times a month, and each lasts three or four hours at a time. Tr. 44. The flare-ups first began in his right foot, but they now also occur in his left foot. Tr. 40. The pain is unbearable for a "minute or two." Tr. 41. Plaintiff is able to stand for up to ten minutes at a time unless he is having gout flare-ups. Tr. 41.

Plaintiff's back is curved at a 14-degree angle and twists to the left. Tr. 43. He is able to sit for short periods only if he moves from side-to-side and braces himself with the arms of the chair as crutches. Tr. 41-42, 44. He lies down on average 40-50% of the day and has difficulty sleeping at night. Tr. 44.

Plaintiff has migraine headaches every three to four days, which are relieved somewhat by Excedrin. Tr. 46. He has experienced hearing loss in his right ear recently, but he does not know why. Tr. 52. He has problems with his memory and his ability to concentrate because of his back pain. Tr. 48.

Plaintiff has not been treated or examined by a psychiatrist or psychologist for his depression. Tr. 47. He has been told, however, that he could start taking medication if it worsened. Tr. 48. As of the hearing date, it had worsened. Tr. 48.

Until 2006 Plaintiff primarily worked in the printing industry as a roll tender, which involved lifting 60-pound shafts. Tr. 50. When he was unable to do that work any longer,

he was transferred to the light-duty job of mopping the press. That job, however, involved bending over, which was as hard for him to do as lifting the shafts.  Tr. 51.

## II.  **VE Testimony**.

The VE testified Plaintiff's job as a roller-printer tender was heavy work and as a sheet-press operator was medium work. Plaintiff has had other jobs, but none of them constituted substantial gainful activity.  Tr. 54, 55.

The VE testified Plaintiff would not be able to perform his past relevant work if he is limited to reading and writing in a simple manner; using numbers in a noncomplex way; and performing only sedentary work limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and operating foot pedals while requiring alternate sitting and standing every 30-45 minutes.  Plaintiff has more than limited hearing in his left ear.  The VE also stated Plaintiff should not be exposed to hazards, cold, or vibration.  Tr. 56.  According to the VE, Plaintiff is able to perform the unskilled sedentary jobs of appointment clerk and telemarketer and an unskilled light job as a parking-lot cashier.  Tr. 58.  If, however, Plaintiff had to miss two or more days of work a month, the VE noted Plaintiff would be unable to retain any of these jobs.  Tr. 59.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, the claimant must show his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841  (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The

7 - OPINION AND ORDER

court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation.

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d

at 1052.    *See also* 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R.
§ 404.1520(a)(4)(1).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.    *Stout*,
454 F.3d at 1052.    *See also* 20 C.F.R. § 416.920(a)(4)(iii);
20 C.F.R. § 404.1520(a)(4)(iii).    Criteria for the listed
impairments, known as Listings, are enumerated in 20 C.F.R. part
404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).    The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.    20 C.F.R.
§ 416.920(e); 20 C.F.R. § 404.1520(e).    *See also* Social Security
Ruling (SSR) 96-8p.    "A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent schedule."    SSR
96-8p, at *1.    In other words, the Social Security Act does not
require complete incapacity to be disabled.    *Smolen v. Chater*, 80
F.3d 1273, 1284 n.7 (9th Cir. 1996).    The assessment of a
claimant's RFC is at the heart of Steps Four and Five of the
sequential analysis engaged in by the ALJ when determining
whether a claimant can still work despite severe medical

impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

·   In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 15, 2007.  Tr. 17.

In Step Two, the ALJ found Plaintiff has the following severe impairments:   scoliosis, kyphosis (curvature of the spine), gouty arthritis, and obesity.  Tr. 17

In Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 30-31.  Based on all of Plaintiff's impairments, the ALJ found Plaintiff has the RFC to perform sedentary work. Plaintiff should not be required to crawl or to climb ropes, ladders, or scaffolds.  He should only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  He may occasionally operate foot pedals or controls.  He should alternate sitting and standing every 30-45 minutes.  He should not be exposed to hazards, extreme cold, or vibration.  He has an intermittent right ear hearing problem and is able to read and to write only simple text and perform only simple arithmetic calculations.  Tr. 19.

In Step Four, the ALJ found Plaintiff's limitations preclude him from performing any past relevant work.  Tr. 23.  The ALJ, however, found Plaintiff's limitations do not preclude him from performing the sedentary, unskilled jobs of appointment clerk and telemarketer and the light, unskilled job of cashier, each of which exists in significant numbers in the national economy. Tr. 24.

Based on his findings, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his physical impairments; (2) failing to address the medical opinion of examining physician, William Duff, M.D.; and (3) relying on the VE's erroneous testimony.

Plaintiff also urges the Court to remand this matter to afford the Commissioner an opportunity to consider the medical opinion of treating physician Kevin Kane, D.O., which was submitted to the Appeals Council after the hearing before the ALJ despite the alleged efforts of Plaintiff's counsel to obtain and to submit the report before that hearing occurred.

## I.   Plaintiff's Credibility.

The ALJ found Plaintiff's testimony that he suffers from "some type of impairment" was "partially" credible, and the ALJ purported to "accommodate these impairments" in his evaluation of Plaintiff's RFC.  Tr. 19, 21.  The ALJ, however, did not credit Plaintiff's testimony that he was "incapable of all work" on the ground that Plaintiff's activities of daily living do not reflect such incapacity and his medical records do not show any surgery, hospitalization for a significant period, or a significant

"record of physical therapy" took place despite "recommendations of treatment providers" that he undergo such surgery and therapy. Tr. 20.  The ALJ also concluded Plaintiff had obtained a "gratifying response to methadone, allowing for increased spinal mobilization and decreased tenderness along the vertebral column."  Tr. 21.  Finally, the ALJ found Plaintiff had responded well to medications prescribed to treat his "gouty arthritis." Tr. 21.

A.  **Standards**.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit set out two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284. If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must specifically identify what

testimony is not credible and what evidence undermines the
claimant's complaints. *Parra,* 481 F.3d at 750 (quoting *Lester,*
81 F.3d at 834).

B.  **Summary of Relevant Evidence**.

There is not any evidence in the record that Plaintiff is a
malingerer.  The ALJ, therefore, was required to provide clear
and convincing reasons for not crediting Plaintiff's testimony
regarding the severity of his impairments.

1.  **Activities of Daily Living**.

The ALJ found Plaintiff's "activities of daily living
are not limited to the extent one would expect of a disabled
individual" because he is able to take medications as prescribed,
to take care of his personal care needs, to prepare his own
meals, to perform some household chores such as laundry, to watch
television, to play video games, to use the computer, to get out
weekly, and to go to the store occasionally.  Tr. 20.  The ALJ
relied on Plaintiff's testimony and the lay evidence from
Plaintiff's brother, which, according to the ALJ, corroborated
the extent of these activities.  Tr. 20, 172-75.

The Court, however, concludes neither Plaintiff's
testimony nor his brother's evidence discredit Plaintiff's
contention that he is not capable of substantial gainful
activity.  Plaintiff testified he lies down 40%-50% of the day
and is only able to sit for short periods by moving from side-to-

side and bracing himself with the arms of the chair as crutches. Tr. 41, 44.  That testimony is consistent with his brother's evidence that Plaintiff watches television and "cannot stand/sit for long periods of time." Tr. 173.  Plaintiff's testimony that he is able to dress himself and to bathe once a week despite his back pain is also substantially consistent with his brother's evidence that Plaintiff does not need reminders to take care of his personal needs.  Tr. 173, 174.

Plaintiff's brother also stated Plaintiff is only able to "make really easy meals like T.V. dinners" that "take only 5 minutes" because Plaintiff "can't stand a long time to make things to eat." Tr. 174.  Heating up a TV dinner is not cooking. Thus, the Court finds the statement of Plaintiff's brother is consistent with Plaintiff's testimony regarding his general limitations in daily living activities.  Tr. 38.

**2.  Medical Records.**

The ALJ concluded Plaintiff's medical records show Plaintiff has not received "the type of medical treatment one would expect from a totally disabled individual." Tr. 21.  The Court disagrees.

a.  <u>Treating Physicians</u>.

From February 2002 until at least April 2003, Plaintiff was treated at Kaiser Permanente.  Tr. 371-467, 472-536.

In July 2002 Plaintiff was treated for neck and upper- back pain, head trauma, and loss of consciousness when an automobile in which he was riding as a passenger was rear-ended. Tr. 522.  In August 2002 Plaintiff began experiencing low-back pain and muscle tenderness as a result of the accident, which, according to the treating physician, was "not surprising." Tr. 517.  X-rays showed old compression fractures and mild kyphoscoliosis (curvature) of the thoracic spine.  Tr. 458. By October 2002 Plaintiff was concerned about his ability to control his pain and its effect on his job.  Tr. 442.

In November 2002 an MRI of Plaintiff's thoracic spine revealed prior vertebral fractures at T-10 and T-11.

In November-December 2002 Plaintiff received six physical-therapy treatments from Licensed Massage Therapist Diane Jensen for low-back pain caused by the automobile accident. Tr. 328.  Time loss from work as a result of the accident was authorized as of November 25, 2002, and he was released to return to work gradually after December 25, 2002.  Tr. 436.

From January 2003 to April 2003 Plaintiff continued to be treated and was prescribed medications for chronic back pain. Tr. 421-30.

In March and April 2003 Chiropractor Donald Ferrante, D.C., also treated Plaintiff for back pain.  An x-ray revealed Plaintiff had functional hypomobility (*i.e.,* a reduction

16 - OPINION AND ORDER

of movement on flexion), resulting in pain during left/right
lateral bending at C5/C6, C6/C7, and C7/T1; asymmetrical
increased translatory motion on lateral bending at C1/C2 (more
pronounced on the left); and functional hypomobility on the left
and right rotations of most of Plaintiff's cervical spine.
Tr. 336.

From May 2006-December 2008 Plaintiff was treated
by Kane for acute mid-back pain after Plaintiff was struck by an
engine hoist.

On his first visit Plaintiff was "very sensitive"
to touch in the thoracic and lumbar spine area, and he exhibited
mild-moderate scoliosis.  A neuromuscular screen, however, was
normal.  Tr. 325.  Three weeks later Plaintiff was "only a little
tender."  Dr. Kane recommended Plaintiff take up yoga.  Tr 322.

In August 2006 Plaintiff complained of "fairly
severe mid/low back pain" and "moderately severe" tenderness in
the vertebral column," which caused him to miss work.  Tr. 319.

In September 2006 Plaintiff had some improvement
for "a day or two before severe pain returned," and he became
"very tender to palpation over the entire mid and low back."
Tr. 318.  As a result, Plaintiff reported he had been unable to
work.  Tr. 318.  He continued to be in extreme pain three days
later.  Tr. 317.  A week later, however, Plaintiff "had a [v]ery
gratifying response to methadone, and his pain level was reduced

to 5 on a 1-10 scale.  Tr. 316.

From November 2006 to February 2007 Plaintiff was scheduled on three separate dates to discuss potential surgery on his back with Dr. Kane, but Plaintiff missed each appointment. Tr. 307, 310, 313.

In January 2007 Plaintiff's gout recurred in his left toe, but he was in remission a month later.  Tr. 306-07.

In January 2008 Plaintiff's scoliosis symptoms were stable, and he was prescribed methadone to ease the pain. Tr. 306.

In May 2008 Plaintiff's back pain was still severe, and he had recurrent gout in his right foot.  Tr. 308. By July 2008 Plaintiff's gout was in remission, his back was less painful, and he had been doing pool exercises.  Tr. 302.  In October 2008, however, Plaintiff again had a severe gout attack and was using a wheelchair.  Tr. 300.

In November 2008 Plaintiff's gout was in remission and Methadone was "controlling scoliotic pain."  Tr. 298.  A month later, however, he had "intractable severe back pain." Tr. 293.

b.  Examining Physician Evidence.

Plaintiff was examined by three physicians from 2003 to 2008.  In February 2003 Orthopedic Surgeon William Duff, M.D., examined Plaintiff at the request of an insurance company.

He opined Plaintiff's spinal compression fractures were related to the 2002 automobile accident and did not find any pre-existing conditions.  Dr. Duff found all treatment provided up to that date was reasonable and necessary, but he found physical therapy had not been "particularly helpful."  Dr. Duff opined Plaintiff would need future surgery and that Plaintiff "is clearly not able to work."  Tr. 333-35.

In April 2003 Neurosurgeon James Makker, M.D., examined Plaintiff.  He noted conservative treatment had not alleviated Plaintiff's pain arising from a "significant compression fracture at T11" and a "smaller compression fracture at T12 with marked kyphosis of the lumbar spine."  Tr. 337. Dr. Makker recommended surgery, but he noted surgery would have the risk "of bleeding, infection, spinal cord injury with resulting paraplegia or motor or sensory deficits, [a]s well as persistence of his pain."  Moreover, it would take Plaintiff several months to a year to completely heal."  Tr. 339.  At that time Plaintiff agreed to the surgery but he did not follow through with it.  Tr. 339.

In September 2008 Internal Medicine Specialist John H. Ellison, M.D., examined Plaintiff on behalf of the Commissioner.  Although Plaintiff was chronically depressed and anxious, he was cooperative.  His range of motion in the cervical and dorsolumbar spine, hips, knees, ankles, shoulders, elbows,

wrists, fingers, and thumbs were within normal limits.  Tr. 268.
Dr. Ellison diagnosed Plaintiff with moderate kyphoscoliosis of
the lower thoracic spine with degenerative disc disease, chronic
pain aggravated by bending, and chronic anxiety and depression.
Tr. 268.

        c.   <u>Consulting Physician Evidence</u>.

        Richard Alley, M.D., and Sharon B. Eder, M.D.,
reviewed Plaintiff's medical records and opined Plaintiff has the
RFC to lift 50 lbs. occasionally, lift 25 lbs. frequently; to
stand, sit, or walk for about six hours in an eight-hour
workday; and to push and to pull on an unlimited basis.
Drs. Alley and Eder found Plaintiff is able to climb ramps and
stairs frequently; to balance, kneel, and crawl; occasionally to
climb ladders, ropes, and scaffolds; and to stoop and to crouch.
They also found Plaintiff does not have any manipulative, visual,
communicative, or environmental limitations.  Tr. 272-75, 327.

    **C.  Analysis**.

    As noted, the ALJ drew an adverse inference regarding
Plaintiff's credibility based on the ALJ's perception that there
were inconsistencies in Plaintiff's description of his daily
activities and his brother's evidence, Plaintiff's lack of
willingness to undergo surgery and physical therapy, Plaintiff's
missed medical appointments, and Plaintiff's positive response to
medications prescribed to treat his gout.  As a result, the

ALJ found even though Plaintiff's back pain and gout constituted severe impairments, they did not preclude Plaintiff from engaging in substantial gainful activity.   Tr. 21.

The Court concludes the ALJ's finding that Plaintiff's testimony lacked credibility as to the limiting effect of his impairments is unwarranted.   Even if the Court does not consider the medical opinion of Dr. Kane, which, as noted, was not before the ALJ at the time of the hearing, the remaining medical evidence (such as the opinions of examining physicians, Drs. Duff and Makker) supports Plaintiff's assertion that he suffers from severe back pain and intermittent, painful episodes of gout that impair his ability to work.   In addition, Plaintiff faced the possibility of surgery that had considerable risk.

Accordingly, the Court concludes the ALJ erred when he did not provide clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not credible.

## II.   **Examining Physician William Duff, M.D.**

Plaintiff asserts the ALJ erred when he failed to address Dr. Duff's February 2003 opinion that Plaintiff was unable to work because of his physical impairments.   The Commissioner concedes the ALJ failed to do so, but argues any error was harmless because Dr. Duff rendered his opinion almost four years before the alleged onset of Plaintiff's disability.   *See*

*Carmickle v. Comm'n,* 533 F.3d 1155, 1165 (9th Cir. 2008)("Medical opinions that predate the alleged onset of disability are of limited relevance," particularly when "disability is allegedly caused by a discrete event."). Moreover, the Commissioner points out that Dr. Duff did not make any specific findings in his report as to Plaintiff's functional limitations.

The Court notes, however, that Dr. Duff's findings regarding Plaintiff's physical impairments are consistent with the findings of Dr. Kane, who treated Plaintiff from May 2006 until December 2008. The Court, therefore, concludes the consistency of Dr. Duff's earlier findings with Dr. Kane's subsequent findings are relevant and, accordingly, the ALJ erred when he did not provide legally sufficient reasons supported by substantial evidence in the record for failing to consider Dr. Duff's opinion when he evaluated Plaintiff's credibility and evaluated Plaintiff's RFC.

## III. **VE Testimony**.

Plaintiff asserts his 9th grade education taught him "to do not much more than simple unskilled types of jobs" requiring Level 2 mathematical skills. *See* 20 C.F.R. § 416.964(b)(3). Although he was capable of performing the jobs of sheet-press operator and roller print tender at that level before the onset of his alleged disability, Plaintiff asserts the "severe level of pain" he now suffers "prevents him from using the mathematical

and language abilities derived from these positions," and he is, therefore, limited to performing tasks at a mathematical development level of 1 (*i.e.*, "simple arithmetic calculations"). Thus, Plaintiff contends the ALJ erred when he posed a hypothetical to the VE on which he ascribed to Plaintiff the ability to perform jobs requiring Level 2 mathematical skills rather than the "simple arithmetic calculations" described by a "mathematical development of 1." The Commissioner, however, asserts the ALJ properly ascribed to Plaintiff the same intellectual functioning level that he exhibited in his prior jobs.

The Court does not find anything in the record to support Plaintiff's assertion that his physical impairments have diminished his intellectual functioning and thereby preclude him from performing the unskilled work involving mathematical development Level 2, which is the same level at which he was performing before the alleged onset of his disability.

The Court, therefore, concludes the ALJ's hypothetical to the VE adequately described Plaintiff's level of intellectual functioning.

## IV.   **Additional Opinion of Treating Physician Kevin Kane, D.O.**

On May 14, 2010, twelve days before the hearing conducted by the ALJ, Plaintiff's counsel asserts and the record reflects he submitted a questionnaire to Dr. Kane seeking his opinion as to

23 - OPINION AND ORDER

Plaintiff's ability to engage in substantial gainful activity.
In his request counsel specifically noted Plaintiff's hearing
before the ALJ was scheduled for May 26, 2010.  Dr. Kane's
completed questionnaire reflecting his opinion arrived in
counsel's office on the date of the hearing.  The record does
not, however, reflect when that opinion was submitted to the ALJ.
The ALJ's decision was issued on June 3, 2010, and the list of
exhibits considered by the ALJ does not include Dr. Kane's
opinion.  Tr. 25-28.

As noted, Dr. Kane was Plaintiff's primary treating
physician from May 2006 until November 2008 and saw Plaintiff on
numerous occasions during that period.

Dr. Kane opined Plaintiff's pain flare-ups caused by gout
would increase in a competitive work environment and prevent
Plaintiff from engaging in "even sedentary work."  He would most
likely have six such flareups per year lasting an average of
four days.  Each incident would cause him to lose 1-2 days of
work per month.  Dr. Kane found Plaintiff is able to lift 20 lbs
occasionally and 10 lbs frequently.  He is able to stand and/or
walk for 6 hours and to sit for 2 hours at one time and for
6 hours in total during an 8-hour work-day.  Plaintiff is able
to reach, handle, finger, and feel frequently and to balance,
stoop, and bend occasionally.  Dr. Kane opined Plaintiff would

experience pain frequently and occasionally have fatigue and weakness during the workday.  Tr. 537-39.

Dr. Kane also found Plaintiff suffers from depression and possible retardation.  His concentration, persistence and pace abilities are mildly affected by his impairments.  Tr. 539-40.

The Court finds Dr. Kane's opinion regarding Plaintiff's ability to work is material and, in fact, is the most significant medical opinion in the record in light of the length of time and the frequency of his treatment and the relative proximity of that treatment to the hearing date compared to other medical providers.  Moreover, even though the ALJ did not have Dr. Kane's opinion at the time of the hearing, the ALJ had access to and even referred to Dr. Kane's treatment records in his written decision.  Tr. 21.

On this record the Court concludes Plaintiff's counsel took reasonable steps to obtain Dr. Kane's medical report containing his opinion as to Plaintiff's limitations and disability in time for the hearing.  Moreover, as noted, although Dr. Kane's opinion as to Plaintiff's ability to work is "new evidence" to the extent that it was not before the ALJ on the date of the hearing, the medical records underpinning that opinion were available to the ALJ as part of the record before the hearing.

Accordingly, the Court finds Dr. Kane's medical opinion is material to the Commissioner's ultimate disability determination and must be considered when determining whether Plaintiff is disabled and entitled to benefits. *See, e.g., Evans v. Comm'r*, 320 Fed. App'x 593, 596 (9th Cir. 2009)("Post-hearing evidence" substantiated by other medical evidence in the record should be considered "to support an argument that the ALJ's decision was not supported by substantial evidence.").

## REMAND

The decision whether to remand for further proceedings or for the immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues

> that must be resolved before a determination of
> disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the
> claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* n.2.

Even though Dr. Kane's opinion was not before the ALJ at the time of the hearing, the Court notes the ALJ had all of the medical treatment evidence underlying Dr. Kane's opinion before him when he issued his decision and the ALJ referred to those records in his written decision.  Dr. Kane's opinion was before the Appeals Council during its review.  In any event, it is noteworthy that the ALJ focused on the positive impact that medication had at times on Plaintiff's gout and back pain, but the ALJ did not address the fact that Dr. Kane's treatment notes reflect such relief was intermittent and temporary at best.

If Dr. Kane's opinion is credited, as the Court concludes it should be, a finding of disability is inevitable.  Accordingly, no useful purpose would be served by remanding this matter for further proceedings.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four

of 42 U.S.C. § 405(g) for the immediate calculation and payment

of benefits.

     IT IS SO ORDERED.

     DATED this 5th day of July, 2012.


                           ANNA J. BROWN
                           United States District Judge